State of Nebraska ex rel. Counsel for Discipline
of the Nebraska Supreme Court, relator,
v. Gregory A. Pivovar, respondent.
___ N.W.2d ___

Filed May 23, 2014.    No. S-12-1165.

1. **Disciplinary Proceedings.** To determine whether and to what extent discipline
   should be imposed in an attorney discipline proceeding, the Nebraska Supreme
   Court considers the following factors: (1) the nature of the offense, (2) the need
   for deterring others, (3) the maintenance of the reputation of the bar as a whole,
   (4) the protection of the public, (5) the attitude of the offender generally, and (6)
   the offender's present or future fitness to continue in the practice of law.
2. ____. In determining the proper discipline of an attorney, the Nebraska Supreme
   Court considers the attorney's actions both underlying the events of the case and
   throughout the proceeding, as well as any aggravating or mitigating factors.

Original action. Judgment of suspension.

John W. Steele, Assistant Counsel for Discipline, for relator.

D.C. "Woody" Bradford III, of Bradford & Coenen, L.L.C.,
for respondent.

Heavican, C.J., Wright, Connolly, Stephan, Miller-Lerman,
and Cassel, JJ.

Per Curiam.

## I. NATURE OF CASE

The issue presented is what discipline should be imposed
on Gregory A. Pivovar, respondent, for his violation of certain
provisions of the Nebraska Rules of Professional Conduct and
his oath of office as an attorney. Judgment was previously
entered on the pleadings as to the facts. Briefing and oral argu-
ment were ordered on the issue of discipline.

Upon consideration, we adopt the referee's recommenda-
tion of a 45-day suspension followed by 2 years of moni-
tored probation.

## II. FACTS

On September 12, 1979, respondent was admitted to prac-
tice law in Nebraska. He has received four previous pri-
vate reprimands.

The instant disciplinary proceedings relate to formal charges filed on December 12, 2012, by the Counsel for Discipline of the Nebraska Supreme Court, relator. In these charges, relator alleged that certain acts of respondent during his representation of Danny Robinson violated respondent's oath of office as an attorney and Neb. Ct. R. of Prof. Cond. §§ 3-501.1 (competence), 3-501.3 (diligence), 3-501.4 (communications), and 3-508.4 (misconduct). Respondent admitted certain allegations, but he denied that he had violated his oath of office or any of the Nebraska Rules of Professional Conduct.

On August 16, 2013, a hearing was held before a court-appointed referee. Based on the evidence adduced at the hearing, the referee filed a report.

The referee's findings may be summarized as follows: In March 2008, respondent was appointed to represent Robinson on a motion for postconviction relief from Robinson's first degree murder conviction. Respondent represented Robinson at an evidentiary hearing on the motion for postconviction relief.

The district court denied Robinson's motion, and respondent sent a letter to Robinson informing him of that decision. Respondent advised Robinson that respondent would need to be reappointed before respondent could represent Robinson on appeal. Respondent enclosed an application to proceed in forma pauperis and the necessary poverty affidavit. However, respondent did not include a notice of appeal or advise Robinson that there were only 30 days to file an appeal (until March 19, 2010). Robinson later sent the district court a letter requesting the reappointment of respondent for purposes of appeal and the application to proceed in forma pauperis with the necessary poverty affidavit.

On March 18, 2010, the district court granted Robinson's application to proceed in forma pauperis and appointed respondent as counsel on appeal. On March 22, respondent received notice of the appointment. The following day, upon reviewing Robinson's file, respondent discovered that no notice of appeal had been filed.

Respondent testified that after he discovered that there was no appeal, he "''[s]tuck [his] head in the sand."'" He did not contact the district court to discuss the fact that he had not received notice of his appointment until after the deadline for filing an appeal had passed. Respondent researched the problem but "'did nothing more.'" At the hearing before the referee, respondent testified that he "''[a]bsolutely"''" should have done more to resolve the problem.

In the months following respondent's appointment to serve as Robinson's appellate counsel, Robinson made "'numerous attempts'" to contact respondent by telephone and letter. Respondent did not answer "'[m]ost'" of these communications. Respondent testified he told Robinson that he was "''"working on whether [Robinson] had an appeal or not."''" However, Robinson testified that respondent said he was working on writing the appellate brief. The referee determined that respondent waited until November 27, 2010, to inform Robinson that an appeal had not been timely filed.

The referee concluded there was "'no dispute that the respondent "put his head in the sand" and failed to communicate with . . . Robinson.'" The referee noted that the main problem was the lack of communication with Robinson, not the missed opportunity to appeal. The referee explained that "even though the appeal time was apparently blown in the first instance, subsequently, . . . Robinson's appeal was permitted and the appeal was properly docketed."

The referee found by clear and convincing evidence that respondent had failed to (1) competently represent Robinson, (2) act with reasonable diligence, and (3) properly communicate with Robinson. The referee determined that respondent had engaged in conduct prejudicial to the administration of justice. Thus, the referee concluded that respondent had violated his oath of office as an attorney and §§ 3-501.1 (competence), 3-501.3 (diligence), 3-501.4 (communications), and 3-508.4 (misconduct).

The referee recommended discipline in the form of a 45-day suspension followed by 2 years of probation with a practice monitor. The referee took into account respondent's four prior private reprimands arising from five separate complaints.

The referee also considered the "overwhelming showing of support" for respondent by members of the legal community and the fact that respondent was cooperative and "generally remorseful."

No exceptions were taken by either party to the referee's report. As such, pursuant to Neb. Ct. R. § 3-310(L), the relator moved for judgment on the pleadings and asked this court to impose the recommended sanction. We granted the motion in part with the following minute entry: "Judgment on the pleadings granted, limited as to the facts. Parties directed to brief the issue of discipline. Matter to proceed to briefing and oral argument."

### III. STANDARD OF REVIEW

A proceeding to discipline an attorney is a trial de novo on the record.[1]

### IV. ASSIGNMENTS OF ERROR

Neither party has taken exception to the referee's report. Neither party assigns any error.

### V. ANALYSIS

#### 1. Background

Because the motion for judgment on the pleadings was granted as to the facts, the issue before us is the appropriate discipline.[2] Under Neb. Ct. R. § 3-304(A), we may impose one or more of the following disciplinary sanctions:

(1) Disbarment by the Court; or

(2) Suspension by the Court; or

(3) Probation by the Court in lieu of or subsequent to suspension, on such terms as the Court may designate; or

(4) Censure and reprimand by the Court; or

(5) Temporary suspension by the Court[.]

[1,2] To determine whether and to what extent discipline should be imposed in an attorney discipline proceeding, we

---

[1] *State ex rel. Counsel for Dis. v. Cording*, 285 Neb. 146, 825 N.W.2d 792 (2013).

[2] See *id.*

consider the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) the offender's present or future fitness to continue in the practice of law.[3] In determining the proper discipline of an attorney, we consider the attorney's actions "both underlying the events of the case and throughout the proceeding," as well as any aggravating or mitigating factors.[4]

Each attorney discipline case must be evaluated individually in light of its particular facts and circumstances.[5] In addition, the propriety of a sanction must be considered with reference to the sanctions imposed in prior similar cases.[6]

## 2. Respondent's Conduct

Respondent's conduct surrounding Robinson's appeal fell below the standards expected of an attorney under the Nebraska Rules of Professional Conduct.

Respondent was not thorough in preparation of the materials necessary for Robinson to appeal from the denial of postconviction relief or in communicating with Robinson about how to proceed with an appeal. Although respondent provided Robinson with several of the documents necessary to perfect an appeal and provided Robinson with some pertinent information, respondent failed to provide Robinson with a notice of appeal or to inform Robinson that he had only 30 days to appeal.

Respondent's representation of Robinson on appeal lacked competence, diligence, and promptness. On the day after receiving the order of appointment, respondent learned that an appeal had not been perfected. Despite this discovery, respondent made no significant effort to resolve the problem.

---

[3] *State ex rel. Counsel for Dis. v. Palik*, 284 Neb. 353, 820 N.W.2d 862 (2012).

[4] See *id.* at 359, 820 N.W.2d at 867.

[5] *State ex rel. Counsel for Dis. v. Beltzer*, 284 Neb. 28, 815 N.W.2d 862 (2012).

[6] *Id.*

Although Robinson's appeal was eventually docketed, this was not due to efforts of respondent.

Our main concern is respondent's lack of communication with his client. Section 3-501.4(a) states that an attorney must do the following:

> (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent . . . is required by these Rules;

> (2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;

> (3) keep the client reasonably informed about the status of the matter;

> (4) promptly comply with reasonable requests for information; and

> (5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

Respondent's interaction with Robinson did not meet these standards. After respondent was appointed to represent Robinson on appeal, respondent did not reply to Robinson's repeated attempts at communication via telephone and letter. Additionally, respondent did not keep Robinson reasonably informed about the status of the appeal. Respondent waited over 8 months before he told Robinson that his appeal had not been perfected. This delay is far from diligent or prompt.

### 3. Aggravating and Mitigating Circumstances

#### (a) Aggravators

As the referee noted, respondent's prior instances of discipline are aggravating factors.[7] Respondent has four prior private reprimands. All but one of these reprimands involved the failure to communicate.

In December 1997, respondent was reprimanded for violating the provisions of the then-existing Code of Professional

---

[7] See *State ex rel. Counsel for Dis. v. Lopez Wilson*, 283 Neb. 616, 811 N.W.2d 673 (2012).

Responsibility relating to misconduct[8] and client funds.[9] Respondent had cashed a check from a client instead of depositing it as required by the Code of Professional Responsibility.

In July 2002, respondent was retained to prepare an application for modification of child support. Respondent prepared the application but failed to use the client's proper name. Thereafter, he failed to make the necessary revisions to the application. He did not appear at a scheduled meeting with the client or respond to the client's attempts at communication. The client terminated respondent's services and requested an itemized statement and return of her deposit. Respondent failed to comply with these requests, and when the client submitted a request for fee arbitration with the help of the Nebraska State Bar Association, respondent did not reply. In May 2003, respondent was privately reprimanded for violating the provisions of the Code of Professional Responsibility relating to misconduct[10] and competency.[11]

In 2010, two separate grievances were brought against respondent. One client reported that respondent had failed to file an appellate brief. A second client terminated respondent's services because of his failure to communicate with the client. The client requested an itemized statement and refund of any unearned fees, neither of which respondent provided. Respondent had not deposited the prepaid fees into his client trust account. Additionally, he did not respond to inquiries from the Counsel for Discipline. For these actions, respondent was reprimanded in July 2010 for violating his oath of office as an attorney; §§ 3-501.1 (competence), 3-501.3 (diligence), and 3-501.4 (communications); and Neb. Ct. R. of Prof. Cond. §§ 3-501.5 (fees), 3-501.16 (declining or terminating representation), and 3-508.1 (bar admission and disciplinary matters).

---

[8] See Canon 1, DR 1-102(A)(1), of the Code of Professional Responsibility.

[9] See Canon 9, DR 9-102(A)(1) and (2), of the Code of Professional Responsibility.

[10] See DR 1-102(A)(1).

[11] See Canon 6, DR 6-101(A)(3), of the Code of Professional Responsibility.

Most recently, in December 2012, respondent was privately reprimanded for violating §§ 3-501.4 (communications) and 3-508.4(a) and (d) (misconduct). Respondent had been retained to represent an individual on his motion for postconviction relief, but he did little work on the case. At one point, respondent went almost 6 months without taking any action in the case. When respondent conducted depositions, he did not inform the client that he was doing so. The client repeatedly contacted respondent without reply. Based on these actions, respondent was "sternly reprimanded."

### (b) Mitigators

The referee identified several mitigating factors, including respondent's remorseful attitude and cooperation throughout the disciplinary proceedings. The referee also considered the overwhelming showing of support for respondent from members of the legal community. Letters were received in support of respondent from 21 members of the legal community, including retired district court judges, an assistant attorney general, public defenders, county attorneys, and individual attorneys. Several letters were also received from individuals attesting to respondent's involvement in the community.

Based on these factors, the referee concluded as follows:

> If we did not have the overwhelming demonstration of support for [respondent], I would tend to agree with the Relator that the suspension should be 90 days followed by a one-year probation with a practice monitor.
>
> However, I believe that this extraordinary level of support should be given some weight in regard to the punishment of [respondent]. Additionally, I have taken into consideration that . . . Robinson's situation was not ultimately harmed, in light of the fact that his appeal was ultimately perfected and is now being processed.

We agree with the referee that respondent's remorseful attitude and cooperation in these proceedings are mitigating factors.[12] But the fact that Robinson's appeal was ultimately

---

[12] See *State ex rel. Counsel for Dis. v. Wadman*, 275 Neb. 357, 746 N.W.2d 681 (2008).

allowed to proceed does not change the fact that respondent failed to reply to Robinson's repeated telephone calls and letters and waited over 8 months to inform Robinson about the problems with his appeal. "'Even when the client's interests are not affected in substance, however, unreasonable delay can cause a client needless anxiety and undermine confidence in the lawyer's trustworthiness.'"[13]

## 4. Sanction Imposed in Similar Case

In *State ex rel. Counsel for Dis. v. Seyler*,[14] we imposed only a 30-day suspension on an attorney who had repeatedly failed to respond to discovery requests and court orders, failed to attend hearings, and failed to keep his clients reasonably informed. Unlike respondent, the attorney in *Seyler* had no prior disciplinary proceedings.

## 5. Conclusion as to Discipline

The evidence establishes that respondent's representation of Robinson violated his oath of office as an attorney and §§ 3-501.1 (competence), 3-501.3 (diligence), 3-501.4 (communications), and 3-508.4 (misconduct). Respondent's representation was not competent, prompt, or diligent. Furthermore, respondent failed to keep Robinson informed and to promptly respond to Robinson's repeated attempts at communication.

The evidence shows that respondent is well respected by the legal community, that he is generally remorseful, and that he cooperated with relator. However, respondent has four prior private reprimands, three of which involved a failure to communicate with clients.

Given the pattern of poor communication exhibited in respondent's prior reprimands, we find that the referee's recommendation of a 45-day suspension followed by 2 years of

---

[13] *Palik, supra* note 3, 284 Neb. at 359, 820 N.W.2d at 867 (quoting § 3-501.3, comment 3).

[14] *State ex rel. Counsel for Dis. v. Seyler*, 283 Neb. 401, 809 N.W.2d 766 (2012).

monitored probation is appropriate. No exceptions have been taken to this recommendation, and we hereby adopt it.

Upon due consideration of the record, we find that respondent should be and hereby is suspended from the practice of law for a period of 45 days, effective immediately. Respondent shall comply with Neb. Ct. R. § 3-316 (rev. 2014), and upon failure to do so, he shall be subject to punishment for contempt of this court. We also direct respondent to pay costs and expenses in accordance with Neb. Rev. Stat. §§ 7-114 and 7-115 (Reissue 2012), § 3-310(P) (rev. 2014), and Neb. Ct. R. § 3-323(B) within 60 days after an order imposing costs and expenses, if any, is entered by this court.

At the end of the 45-day suspension, respondent may apply to be reinstated to the practice of law, provided that he has demonstrated his compliance with § 3-316 and further provided that relator has not notified this court that respondent has violated any disciplinary rule during his suspension. Upon reinstatement, respondent shall complete 2 years of monitored probation. During the period of probation, respondent will be monitored by an attorney licensed to practice law in the State of Nebraska and approved by relator. The monitoring plan shall include but not be limited to the following:

(1) On a monthly basis, respondent shall provide the monitoring attorney with a list of all cases for which respondent is then currently responsible, said list to include the following information for each case: (a) the date the attorney-client relationship began, (b) the type of case (i.e., criminal, dissolution, probate, contract, et cetera), (c) the date of the last contact with the client, (d) the last date and type of work completed on the case, (e) the next type of work and date to be completed on the case, and (f) any applicable statute of limitations and its date;

(2) On a monthly basis, respondent shall meet with the monitoring attorney to discuss respondent's pending cases;

(3) Respondent shall work with the monitoring attorney to develop and implement appropriate office procedures to ensure that client matters are handled in a timely manner; and

(4) If at any time the monitoring attorney believes respondent has violated a disciplinary rule or has failed to comply

with the terms of probation, the monitoring attorney shall report the same to relator.

## VI. CONCLUSION

It is the judgment of this court that respondent should be and hereby is suspended from the practice of law for a period of 45 days, effective immediately. It is the further judgment of this court that upon completion of the period of suspension and reinstatement to the bar, respondent shall be placed on monitored probation for 2 years, subject to the terms set forth above.

JUDGMENT OF SUSPENSION.

McCORMACK, J., not participating.

---

KIM CONROY, TAX COMMISSIONER, AND RUTH SORENSON,
PROPERTY TAX ADMINISTRATOR, APPELLANTS, v.
KEITH COUNTY BOARD OF EQUALIZATION AND
CENTRAL NEBRASKA PUBLIC POWER AND
IRRIGATION DISTRICT, APPELLEES.

___ N.W.2d ___

Filed May 23, 2014.    No. S-13-277.

1. **Taxation: Judgments: Appeal and Error.** An appellate court reviews decisions rendered by the Tax Equalization and Review Commission for errors appearing on the record.
2. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is not arbitrary, capricious, or unreasonable.
3. **Taxation: Appeal and Error.** An appellate court reviews questions of law arising during appellate review of decisions by the Tax Equalization and Review Commission de novo on the record.
4. **Judgments: Jurisdiction.** Jurisdictional questions that do not involve a factual dispute present questions of law.
5. **Constitutional Law: Intent.** Constitutional provisions are not open to construction as a matter of course; construction is appropriate only when it has been demonstrated that the meaning of the provision is not clear and that construction is necessary.
6. **Constitutional Law: Courts: Intent.** If the meaning is clear, the Nebraska Supreme Court gives a constitutional provision the meaning that laypersons would obviously understand it to convey.